**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTER DISTRICT OF VIRGINIA**
**Norfolk Division**



FILED

DEC 2 1 2015

CLERK, US DISTRICT COURT
NORFOLK, VA

BRIAN A. BROWN

    Plaintiff,

v.                           CASE NO. 2:15cv 551

DISTINCTIVE EVENT RENTALS, Inc.

        Serve:  Robert H. Powell, III
               Kaufman & Canoles
               150 West Main Street, Suite 2100
               Norfolk, Virginia 23510-1609

**COMPLAINT**

    Plaintiff, Brian A. Brown ("Brown"), by counsel, for his Complaint against

Defendant, Distinctive Event Rentals, Inc. ("Distinctive"), alleges as follows:

THE PARTIES

1.    Plaintiff is a natural person, is, and at all times relevant hereto was, a citizen of the

Commonwealth of Virginia, residing in the city of Virginia Beach, Virginia.

2.    Defendant is a Virginia corporation, with its principal office located in Chesapeake,

Virginia.

JURISDICTION AND VENUE

3.    This court has jurisdiction over the subject matter of this complaint pursuant to 28

U.S.C. §§ 451, 1331, and 1343.  This action is authorized and instituted pursuant to Section

107(a) of the Americans with Disabilities Act of 1990 ("ADA").

4.      Prior to instituting this suit, Brown timely filed an administrative claim with the Norfolk Office of the Equal Employment Opportunity Commission (EEOC) on December 29, 2014.

5.      Despite finding reasonable cause to believe Defendant violated Plaintiff's rights under the ADA, the EEOC failed to resolve the claim and issued a right-to-sue letter dated September 30, 2015.  A true and correct copy of the right-to-sue letter is attached to this complaint and incorporated by reference as Exhibit "A."

6.      Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. §1391(b)(2) and (c).

## STATEMENT OF FACTS

7.      Plaintiff is a qualified individual with a disability within the meaning of the ADA. Specifically, Brown has severe hearing impairment.   As a result, Plaintiff's first language is Sign Language and English is his second langue.

8.      On or about May 2014, Plaintiff began employment with Defendant in its maintenance department.  Plaintiff's employment with Defendant happened, in part, through his working with Hired Hands, an organization that assists individuals with disabilities in finding employment opportunities.

9.      During the initial hiring process, Defendant was fully aware of Plaintiff's disability and hired him with the understanding that Plaintiff would require certain reasonable accommodations as an employee.

10.     Brown initially performed his assigned duties and tasks without issue. Brown understood Defendants had promised to provide him with a sign language interpreter for any and all employee meeting starting within his first 90 days of employment.

2

11.     In or about August 2014, Defendant called an employee meeting requiring Plaintiff to attend but did not provide an interpreter for the meeting.  As a result, Plaintiff was neither able to understand the substance of the meeting nor participate in the meeting.

12.     Plaintiff reminded Defendant's General Manager, Jim Kordahl of his need of an interpreter for any subsequent employee meetings.  Kordahl expressed his apologies to Plaintiff and promised to address this matter in the future.

13.     In or about September 2014, Plaintiff was given his first performance review.  Again, Defendant failed to provide an interpreter and as a result, Plaintiff was unable to fully understand the substance of the review nor participate by providing feedback.  A representative of Hired Hands specifically spoke to Kordahl in September 2014 regarding the importance of having an interpreter present for Plaintiff during company meetings and other occasions such as employee evaluations.

14.     Also, during Plaintiff's first 90 days of employment, he was promised that Defendant would modify its fire alarm system to include a strobe light in order that Plaintiff could see any alarm issues – not being able to hear such matters.

15.     Throughout the remainder of 2014 and well into 2015, Plaintiff made numerous requests to Kordahl regarding having an interpreter for employee meetings and modifying the fire alarm system to include a strobe light.  Kordahl was well aware of Plaintiff's disability and requests and failed to properly address them.

16.     In December 2014, Defendant held a company Christmas party and again failed to provide an interpreter; as a result, Plaintiff was unable to fully participate in or enjoy the occasion.

17. In December 2014, Defendant held an employee meeting concerning health insurance. Defendant again failed to provide an interpreter. Plaintiff did not understand the substance of the meeting and missed a key deadline that resulted in him going without insurance for the year 2015.

18. Shortly after Plaintiff filed a charge of discrimination with the EEOC, Defendant changed Plaintiff's responsibilities; this was effectively a demotion.

19. In February 2015, Defendant issued Plaintiff a write-up but failed to provide an interpreter during this meeting. Again, Plaintiff was unable to understand the substance of this meeting nor could he fully participate.

20. In March 2015, Defendant held two meetings without providing Plaintiff an interpreter. One of these meetings entailed Defendant demoting Plaintiff from the maintenance to production. Plaintiff considered this retaliatory for his filing of the EEOC complaint on December 29, 2015.

21. In April 2015, Defendant held a warehouse meeting and provided an interpreter for Plaintiff. This was the only occasion in which Defendant provided an interpreter.

22. On April 7, 2015, Plaintiff timely filed an administrative claim with EEOC relating to Defendant's retaliating against him for his first claim of discrimination. The EEOC failed to resolve the claim and issued a right-to-sue letter dated September 29, 2015. A true and correct copy of the right-to-sue letter is attached to this complaint and incorporated by reference as Exhibit "B."

23. On May 21, 2015 Plaintiff was placed on FMLA leave by Defendant's manager, Bill Cabell. The initial leave was set to end on July 15. Plaintiff's FMLA leave was based serious neurological issues with which he was dealing in May 2015.

4

24.     On July 15, Plaintiff's neurologist lifted his work restrictions and on July 17, 2015 Plaintiff was cleared to work his primary care physician with some minor restrictions. When notified of Plaintiff's clearing for work, Defendant refused to allow him back to work and demanded additional details from Plaintiff's physicians.

25.     Throughout July and into early August 2015, Plaintiff made numerous attempts to communicate with Kordahl regarding his returning to employment with Defendant. Kordahl refused to communicate with Plaintiff.

26.     On August 5, 2015, Plaintiff learned that his employment with Defendant had been terminated.

27.     Believing Defendant had again retaliated against him (i.e., his firing) for filing with the EEOC and claiming FMLA leave, Plaintiff timely filed an administrative claim with EEOC on September 7, 2015. The EEOC failed to resolve the claim and issued a right-to-sue letter dated November 19, 2015. A true and correct copy of the right-to-sue letter is attached to this complaint and incorporated by reference as Exhibit "C."

JURY DEMAND

28.     Plaintiff demands a jury trial.

COUNT I
ADA – Failure to Accommodate and Disability Discrimination

29.     Plaintiff repeats and realleges each and every Paragraph of this Complaint as though fully set forth herein.

30.     At all times relevant herein, Defendant was an "employer" and Plaintiff was an "employee" under the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 et seq.

5

31.     At all relevant times, Plaintiff was a "qualified person with a disability" within the meaning of the ADA.

32.     Defendant was fully aware of Plaintiff's physical impairment. Despite being aware of Plaintiff's medical conditions, Defendant failed to engage in the interactive process and failed to provide reasonable accommodations as required by the ADA.  Defendant would not have endure any undue hardship by providing Plaintiff the requested reasonable accommodations.

33.     Plaintiff requested a Sign Language interpreter and strobe lighting on numerous occasions.  Defendant repeated ignored and/or denied Plaintiff's requests.

34.     Defendants violated Brown's civil rights by discriminating against him on the basis of his disability, history of disability and/or perceived disability in the following respects:

     a.     denying Plaintiff's requests for a Sign Language interpreter;

     b.     denying Plaintiff's requests for strobe lighting;

     c.     effectively demoting Plaintiff immediately following his filing of an EEOC charge complaint;

     d.     refusing to allow Plaintiff to return to work following his FMLA leave;

     e.     firing Plaintiff in response to his EEOC filings and his FMLA leave.

35.     Defendants violations of the ADA were willful.  Defendants unlawful practices were carried out with malice and/or reckless indifference to Brown's federal rights.

36.     As a direct and proximate result of Defendants' violations of the ADA, Plaintiff has suffered damages, including but not limited to loss of past and future income and fringe benefits, loss of professional reputation, mental anxiety and emotional distress.

## COUNT II
### ADA – Retaliation

37.    Plaintiff repeats and realleges each and every Paragraph of this Complaint as though fully set forth herein.

38.    Defendant's conduct as alleged above constitutes retaliation against the Plaintiff because she engaged in activities protected by the ADA and therefore disability based discrimination.  As a direct result of Plaintiff's engaging in such protected activities, he was retaliated against immediately and repeatedly by his supervisors and treated differently (and adversely affected) than his coworkers.  The stated reasons for Defendants' conduct were not the true reasons, but instead were pretext to hide Defendants' retaliatory animus.

39.    Defendant's conduct was intentional and its violations of federal law were willful.

40.    As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has suffered damages, including but not limited to loss of past and future income and fringe benefits, loss of professional reputation, mental anxiety and emotional distress.

41.    Plaintiff should be awarded an appropriate amount for lost wages and benefits, loss of earning capacity and future lost wages and benefits of employment.

42.    Plaintiff is entitled to recover his reasonable attorneys' fees, costs and expert witness expenses pursuant to the ADA.

## COUNT III
### Violation of The Family Medical Leave Act – Retaliation

43.    Plaintiff repeats and realleges each and every Paragraph of this Complaint as though fully set forth herein.

44.    Defendant qualifies as an "employer" as defined in the FMLA, 29 U.S.C. § 2611(4), and Plaintiff is an "eligible employee" as defined in the FMLA, 29 U.S.C. § 2611(2).

45.     Plaintiff had an "entitlement to leave" as defined in the FMLA, 29 U.S.C. § 2612(1) and was retaliated against for taking leave as prescribed in the FMLA.

46.     Defendant is responsible under the FMLA for retaliating against Plaintiff in violation of his federal rights.

47.     As a Plaintiff's firing, Brown has incurred, and is now incurring, a loss of wages and continuing medical expenses, all within the meaning of the FMLA, 29 U.S.C. § 2617(a), in an amount to be proved at trial.  These costs and damages include, without limitation, lost wages and medical expenses during Plaintiff's period of unemployment, back pay from the effective date of termination, lost medical expenses, and lost employment benefits, the loss of front pay as of the date of this complaint, attorneys' fees and costs, and any interest on the amount thereon as provided by the FMLA, 29 U.S.C. § 2617.

48.     Defendant is liable for Plaintiff's costs and damages described in the preceding paragraph.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Brian A. Brown, prays for entry of judgment in favor of Plaintiff and against Defendant, Distinctive Event Rentals, Inc. the following relief:

a.     Back Pay;

b.     Front Pay;

c.     Compensatory Damages;

d.     Punitive Damages;

e.     Attorneys' fees and court costs associated with this suit; and

f.     Other such relief as may be appropriate to effectuate the purpose of justice.

8

Respectfully Submitted,

BRIAN A. BROWN

Todd M. Gaynor, Esquire
Virginia Bar No.: 47742
Counsel for Bruce Lowe
TAYLOR WALKER P.C.
555 Main Street, Suite 1300
Norfolk, Virginia 23510
Voice: (757) 625-7300
Facsimile: (757) 625-1504
tgaynor@taylorwalkerlaw.com

*Counsel for Brian A. Brown*